DANIEL M. ROBERTSON *et al.*, plaintiffs in error, *v.* THE COUNTY COMMISSIONERS OF MARSHALL COUNTY, defendants in error.

## *Error to Marshall.*

In all actions on official bonds for the use of any person, the person for whose use the action is to be commenced, must, before he institutes suit, file security for costs, whether the action be commenced in the Circuit or Probate Court.

An. action was commenced in the Probate Court upon an official bond, but no security for costs was filed by the person for whose use it was brought. It did not appear that any motion to dismiss the suit was made by the opposite party in that Court: *Held*, that the party, by omitting to make the motion in that Court, waived his right to do so when the case was taken into the Circuit Court.

Probate Justices of the Peace have jurisdiction of suits upon official bonds.

In actions upon official bonds of constables, for failure to return an execution within the time required by law, the measure of damages is the amount of the execution with interest from the date of the judgment on which it issued, notwithstanding the defendant in execution was wholly insolvent from the time of its issue to that of its return.

THIS suit was originally brought before the Probate Justice of the Peace of Marshall county by the present defendants in error for the use of Cochran & Perry, on the official bond, as a constable, of Robertson, one of the plaintiffs in error, for failing to return an execution in his hands for collection, within the time prescribed by law. A judgment was rendered against him and his sureties for the penalty of the bond, $1000, but execution was to issue only for the sum of $51·92 and costs. An appeal was taken to the Circuit Court of that county.

Upon the trial of the cause in the latter Court, at the October term, 1847, the Hon. John D. Caton presiding, the defendants entered a motion to dismiss the suit for want of security for costs, which motion was overruled by the Court.

The plaintiffs below then offered a certified copy of the official bond in evidence, to which the defendants by their counsel objected, but the objection was overruled, and the copy was read in evidence. They next proved the recovery

of a judgment before a justice of the peace in favor of Cochran & Perry against John C. Gore for $46·21, on the 19th of August, 1845, and the issuing and delivery of an execution upon said judgment, on the same day. The execution was levied upon some grain, and, by direction of the plaintiffs therein, it was returned and a second execution was issued. This was returned by the sheriff, January 8, 1846, by plaintiffs' direction, and a third execution was issued, delivered to Robertson, and returned by him, September ·26, 1846, "no property found."

It was proved that the property levied on was left in the possesion of Gore by the plaintiffs' direction, and was finally relinquished to him by them on his agreeing to furnish them with certain other property to an amount sufficient to pay the debt, &c. It was also proved that the plaintiffs kept their excutions alive, not for the purpose of making the money out of the property levied on, but to prevent a lien and to keep it from other creditors of Gore.

The defendants offered to prove that Gore was insolvent, and entirely destitute of property, from the time of suing out the last execution until the commencement of this suit. The plaintiffs objected to this evidence and it was excluded by the Court.

Judgment was then rendered by the Court, without the intervention of a jury, for $1000, the penalty of the bond, and execution ordered to be issued for $52·74, the amount of the original execution, interest and costs.

The defendants then entered a motion for a new trial, which the Court overruled, and a final judgment was rendered.

*O. Peters,* for the plaintiffs in error.

1. The motion to dismiss for want of security for costs should have been sustained.

We admit that there is no express provision of the statute requiring security in this case *eo nomine.* Rev. Stat. 126, § 1 provides, however, that in actions on official bonds, a bond for costs shall be filed with the clerk, thus implying

that if suits are to be brought on official bonds, they are to be instituted only in Courts of record where there is a clerk.

But it is clear, that at the time when our cost Act was passed, justices of the peace had no jurisdiction of actions on official bonds. If they have such jurisdiction now, it is a transfer of a part of the jurisdiction of the Circuit Courts to them, and if so, it would seem to follow, that the incidents of the jurisdiction should be transferred with the jurisdiction itself. There is the same reason for requiring security for costs, as when the jurisdiction over the same subject matter was exercised exclusively by the Circuit Courts.

2. The testimony of Gore, as to his own insolvency, ought not to have been excluded.

The officer, as well as the sureties on his bond, ought to have been permitted to prove what the actual loss of Cochran & Perry was, or that they had suffered no actual loss by the acts of Robertson. There is no justice nor rule of right which would require that he should pay them money which his acts have not caused them to lose. The inquiry should be, what have they lost, what measure of damages have they suffered by his acts? The case shows that Gore had no property on which the third execution could have been levied, from the day it was issued, up to the time of the commencement of this suit.

Our Practice Act, (Rev. Stat. 416, § 18,) regulates the proceedings in actions on penal bonds. This section is a re-enactment of the statute of 4th of Anne on the same subject, and is to receive the same construction. The language of these Acts is, that the "plaintiff *may* assign breaches," &c. The word *may* is construed to mean *shall,* and the jury shall assess the damages occasioned by the breaches in the condition of the bond. No rule for the damages is indicated, nor is there any thing to show that the assessment is to be other than the actual damage the party has suffered. Sedgwick on Damages, 412, 416, 717.

It was formerly holden in Connecticut, as "stern policy

rather than exact justice," that an officer, for neglect of duty in serving process, should be holden for the whole debt; but this rule has been changed, and it is now settled in that State, that the actual loss shall, ordinarily, be the measure of damages. *Palmer* v. *Gallup*, 16 Conn. 555, and see the note to that case. In Massachusetts, the same rule has been fully settled. *Glezen* v. *Rood*, 2 Metc. 490; *Laflin* v. *Willard*, 16 Pick. 64.

When the plaintiffs prevented the officer from doing his duty, they were entitled to only nominal damages. *Wood* v. *Bartlett*, 10 Mass. 470; *Rich* v. *Bull*, 16 do. 294; *Simmons* v. *Redford*, 15 do. 82.

So, also, in Newhampshire. *Bruce* v. *Pettingill*, 21 New Hamp. 341.

Also in New York. *Russell* v. *Turner*, 7 Johns. 189; *Potter* v. *Lansing*, 1 do. 215; *Kellogg* v. *Brown*, 9 do. 300.

It was doubted on whom the burden rested, whether the plaintiff must go beyond proving his debt, to entitle him to recover; but we admit the rule now to be, that the *onus* is on the defendant, and he must prove that the plaintiff has not lost by his neglect. *Patterson* v. *Westervelt*, 17 Wend. 543; *Bank of Rome* v. *Cartiff, Sheriff, &c*, 1 Hill's (N. Y.) R. 375.

In the case of *Simmons* v. *Redford*, 15 Mass. 82, before cited, the officer was not permitted to show the facts in mitigation of damages. He had returned upon the writ that he had taken bail, and refused to return the bail bond, and it appeared that he had taken no bond, and this case is clearly distinguishable from the others.

3. The motion for a new trial ought to have been allowed. The whole of the evidence is given in the bill of exceptions.

This shows that the officer did his duty on the first execution, levied and returned it, as the plaintiff directed; and so of the second. There was no default as to these.

As to the third execution: Whilst it was in his hands, the plaintiffs, (Cochran & Perry,) released their lien upon the

property to Gore, and agreed with him to take hogs and a cow for their debt. This was a binding agreement on them. They had directed him generally not to sell, but to preserve their lien by the levy. They then left it discretionary with him to do as he should judge best. They never countermanded this direction. By his levy on the property he acquired a right to sell after the life of the execution, and the lien continued. It is true he had a right to sell without the execution ; but he was not obliged to do so. *Phillips* v. *Dana,* 3 Scam. 551.

The plaintiffs in the execution undertook to control it, and did control it ; and it would be a reproach to the law, to permit them to turn round upon the officer, and force him to pay the amount of this judgment, when, but for their interference, he would have made the money on the first execution. They did that which was a fraud upon other creditors, and now they seek to charge the officer and his sureties, for the result of those fraudulent acts of their own.

*T. L. Dickey* for the defendants in error, presented the following points and authorities :

I. The motion to dismiss for want of security for costs was properly overruled.

1. Because section one, chapter twenty six, of the Revised Statutes, does not, by its terms, apply to proceedings commenced before justices of the peace.

2. Because it is a dilatory motion, and not being made before the justice of the peace, will be held to have been waived. Rev. Stat. 325, §§ 66, 67.

II. The justice's jurisdiction is given expressly by statute. See Rev. Stat. 332, §§ 118—123.

III. The true measure of damages was adopted. It is expressly prescribed by the statute, and in such cases the Common Law authorities do not apply. See Rev. Stat. ch. 59, §. 118, in connection with Gale's Stat. 424, § 10.

The Opinion of the Court was delivered by

TRUMBULL, J.*    This was an action upon the official bond of a constable, commenced against the constable, Robertson, and his securities, before the Probate Justice of Marshall County, acting as an ordinary justice of the peace, and taken by appeal to the Circuit Court, where judgment was rendered against the plaintiffs in error for $1000, the amount of the penalty of the bond, with an order that an execution issue for fifty two dollars and seventy four cents, being the amount of damages as found by the Court, a jury having been dispensed with by consent of parties.

The Circuit Court overruled a motion to dismiss the suit, and two causes are now assigned to show that decision to be erroneous :    *First*, that the suit should have been dismissed for want of security for costs, and *secondly*, because the Probate Justice had not jurisdiction of the cause.

Section one, chapter twenty six, of the Revised Statutes, provides, that in all actions on office bonds for the use of any person, the person for whose use the action is to be commenced, shall, before he institutes such suit, file with the clerk of the Circuit or Supreme Court in which the action is to be commenced, security for costs.    This section of the statute manifestly has reference, by its terms, to actions commenced in the Circuit or Supreme Court, and not to those instituted before a justice of the peace ; but at the time of its passage, justices of the peace had no jurisdiction of actions upon office bonds.    That jurisdiction was conferred by a subsequent statute, and as there is the same reason for requiring security for costs, whether the action is brought before a justice or the Circuit Court, it is but fair to presume that the Legislature, in transferring to justices of the peace concurrent jurisdiction with the Circuit Court in this class of cases, intended to confer also the incidents to

* Caton, J. did not sit in this case.

that jurisdiction, so far as they were applicable to proceedings in a justice' court. Had the motion to dismiss been made in the first instance before the Probate Justice, and in case of refusal renewed in the Circuit Court, its decision denying the same would have been error. It does not, however, appear that any motion to dismiss was made before the Probate Justice, and as the motion is of a dilatory character, tending only to defeat the action, and not the cause of action, the plaintiffs in error, by omitting to make it before the justice, waived their right to do so when the case came into the Circuit Court.

Upon the question of jurisdiction in the Probate Justice to try the cause, there cannot be a doubt. The jurisdiction and mode of proceeding are expressly given and pointed out in sections, from 118 to 123, inclusive, of the Act concerning justices of the peace and constables. Rev. Stat. 332. The fact that difficulties may arise in the exercise of this jurisdiction by justices of the peace, which we apprehend will be less than counsel suppose, does not take away the jurisdiction itself.

The only remaining question raised by the assignment of errors, and indeed the principal and most important one, relates to the measure of damages. Robertson, as constable, had failed to return an execution in favor of Cochran & Perry within ten days after its proper return day, and on account of this failure, the parties for whose use the suit was brought, insisted upon damages to the full amount of their execution and interest, while the plaintiffs in error contended that they were liable only for nominal damages in case they could show that Cochran & Perry had suffered no real injury by the neglect of the constable to return the execution, and offered evidence tending to show the insolvency of the defendant in execution, and that Cochran & Perry had sustained no real damage by the failure to return the execution within the time required by law. This evidence the Court excluded, and assessed the damages to the amount of the execution and interest.

The correctness of this assessment of damages depends upon the construction to be given to section 118, chapter 59, of the Revised Statutes, which is as follows : " If any constable shall neglect or fail to return an execution within ten days after its proper return day, or if the demand, debt or claim be wholly or in part lost, or if any special damage shall arise to any party by reason of the neglect or refusal to act, or the misfeasance or nonfeasance of any constable in the discharge of any official duty, the party aggrieved may have his action in the Circuit Court, or when the amount claimed does not exceed one hundred dollars, before any justice of the peace of the proper county, against such constable and his securities on the official bond of such constable, and shall recover thereon the amount of said execution, with interest from the date of the judgment upon which the original execution issued."

To give this section of the statute a literal meaning, and allow damages to the extent of the execution and interest in all cases where the party aggrieved is authorized by said section to have his action, would, it is insisted, be absurd, and indeed impossible; as in the case of a neglect by the constable to serve a summons, it would be impossible to allow the party aggrieved in an action upon the constable's bond, damages to the amount of the execution, when in fact there was and had been no execution; wherefore it is contended, that as the last clause of the section fixing the amount of damages to be recovered, cannot be enforced in all the various cases where the party aggrieved is authorized to sue, it was improperly enforced in this case. What construction is then to be given to this section of the statute ? Shall the last clause, which declares that the party aggrieved shall recover the amount of said execution with interest, be construed to have no meaning? Such will be the consequence, if the construction contended for by the plaintiffs in error be adopted, for if this latter clause does not apply to a case where a constable neglects to return an execution within the ten days, it cannot apply to any case.

The Legislature manifestly intended something by the language used, and it is the duty of the Courts to give effect to the legislative intention· as manifested by the words they have chosen.   This can be done by holding that the amount of damages to be recovered for a failure to return an execution within the ten days, is the amount of the execution with interest, while the sum to be recovered in the other cases provided for in said section, is the amount of damages actually sustained.   This construction gives effect to the whole section, and is undoubtedly in accordance with the intention of the Legislature.   Upon a careful examination of the whole section, it will be seen that the word *execution* occurs but twice in it; once when speaking of a failure of the officer to return an execution within a certain time, and again in the last clause of the section, which declares the amount to be recovered, and where it is prefixed by the word "*said,*" thus referring back to the word as previously used in the first part of the section.   So that in strictness, the clause of the section declaring the amount of the recovery to be had, is confined, by the language used, to the clause having reference to the return of the execution.

We are fortified in the construction we have adopted, by the fact that the provision declaring that if a constable should fail to return an execution within a certain number of days of its proper return day, he and his securities should be liable upon his official bond to pay the whole amount of said execution with interest, as originally passed, constituted a separate section by itself.   Gale's Stat. 424, § 10.   But in the revision of the statutes, that and several other sections have been combined in one, which accounts for the apparent awkwardness of the section as it now reads in the Revised Statutes.   If the original section had been preserved in the revision, there could be no question as to its proper construction.

The statute requires an execution to be returned within a certain time, and lest this requirement should be disregarded, provides that if a constable will continue to violate

his duty by failing to return an execution for ten days after its return day, both he and his securities shall be liable to the party aggrieved for the full amount of the execution, and interest upon the judgment on which it issued. It was undoubtedly competent for the Legislature to impose such a liability for a failure by the constable to perform his duty, and the numerous cases cited to show that, as a general rule, the obligors upon a bond are only liable to respond in damages to the amount of the real injury occasioned by the breach complained of, can have no application to this case, because the Legislature has declared what the meas-.. ure of damages shall be.

Being, therefore, of opinion that the failure by a constable to return an execution within ten days of its return day, renders himself and his seccrities liable upon his official bond for the amount due and unpaid upon said execution to the plaintiff therein, with interest from the date of the judgment upon which the execution issued, it follows that the Circuit Court did not err in refusing to admit evidence of the insolvency of the defendant in execution, as such evidence could not have varied the amount or measure of damages as fixed by the statute.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*